Law Offices of Elliott T. Dennis
1503 West 31st Avenue, Suite 201
Anchorage, AK 99503
Phone: 929-4890

RECEIVED

FEB 0 1 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

Attorneys for David Sturdevant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DAVID STURDEVANT, )
)
)
Plaintiff, )
)
v. )
)
LaBRISA, INC. )
)                      3:06-cv-00025 TMB
Defendant. )
_____ )  Case No. A06-____ (___) CV

### COMPLAINT

Plaintiff for his claim against the Defendant, complains and alleges as follows:

1. This court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. 1332(a), 28 U.S.C. 1333, and the Admiralty and Maritime Jurisdiction of this court.

2. Plaintiff is a resident of the state of Oregon but he is currently residing in the state of California.

3. At all times relevant hereto Defendant, LaBrisa, Inc., was an Alaskan Corporation, the owner of the F/V Wayward Wind, USCG No. 534777, and the employer of its master and crew, including the Plaintiff.

4.  At all times relevant hereto, Max Hulse, as president of LaBrisa, Inc., exercised control over and directed the operation of F/V Wayward Wind through the vessel master and deck boss, Dick Sturdevant. Dick Sturdevant is Plaintiff's brother.

5.  At all times relevant hereto, the F/V Wayward Wind was engaged in the scallop fisheries in Prince Williams Sound in the state of Alaska. The F/V Wayward Wind was licensed as an Alaska Commercial fishing vessel and it harvested, processed, and froze the scallops.

6.  On or about June 15, 2005, Plaintiff signed on to the F/V Wayward Wind as a crewman to participate in the scallop fisheries in Prince Williams Sound, Alaska. He came to Alaska from his home in Oregon because Dick Sturdevant had helped him obtain a job on the F/V Wayward Wind.

7.  After several days of working aboard the F/V Wayward Wind in Homer, Alaska preparing her for the fishing season, the vessel sailed to Cordova, Alaska where it took on fuel, picked up an additional crew member and a fisheries observer. The vessel left Cordova, Alaska sailed to the fishing grounds in Prince Williams Sound, and commenced scallop fishing.

8.  Before the voyage commenced and during the voyage, Plaintiff and other crew members were notified that they better not become sick or injured because the vessel would not return to port until the fishing season was over or the vessel had harvested its allotted quota of product and that the vessel would neither return to port nor call for a medical evacuation if a crewman becomes injured or ill. This information was regularly communicated by Dick Sturdevant, the vessel deck boss, after he spoke with the vessel master. This information was also stated by Max Hulse, when Plaintiff signed on as a crewman in Eagle River, Alaska.

COMPLAINT
Page 2
Complaint (Sturdevant v. Hulse et al - Case No. A06-_____ CV (_____)

9. At all times relevant hereto, the master and crew of the F/V Wayward Wind were employed by Defendant LaBrisa, Inc., the owner of the F/V Wayward Wind and pursuant to the legal principal of *respondeate superior*, LaBrisa, Inc. is liable for the acts and omissions of its president, as well as the master and crew of the F/V Wayward Wind.

10. At about June 29, 2006, Plaintiff stepped on a small piece of scrap metal laying on the floor of the passageway leading from his bunk in the fore castle. He did not see the scrap metal because of poor lighting conditions. The full force of his body weight drove the piece of metal into his left foot. After removing the piece of metal from his left foot, he went to work.

11. Over the next several days Plaintiff experienced pain in his left foot. Initially, Plaintiff did not believe he had suffered a significant injury, but with the passage of time, the pain worsened. Plaintiff continued working as best as he could and did not seek medical attention because he had been told without qualifications that taking the vessel into port or calling in a medical evacuation flight were not options available to him.

12. By July 10, 2005, Plaintiff was experiencing tremendous pain, he was running a temperate and vomiting, and he was trying to work. Plaintiff was unable to continue working. By then it was obvious that an infection had set in; discoloration from the infection was observable and had moved from his left foot up to Plaintiff's left knee. Under these circumstances, the master of the F/V Wayward Wind, called Max Hulse for direction and Max Hulse declared a medical emergency and instructed the master to contact the United States Coast Guard (USCG) which dispatched a medivac helicopter. Plaintiff was transported to the hospital in Cordova, Alaska by USCG helicopter for emergency medical treatment.

13.     Plaintiff was hospitalized for five days at Cordova, Alaska for treatment of an infection and a diabetic ulcer in his left foot. He was then referred to Providence Hospital in Anchorage, Alaska where he was seen, but not admitted, for treatment. Plaintiff had no place to live so he returned to Oregon where he saw and was treated by Dr. Wilks in Roseburg, Oregon.

14.     Plaintiff underwent an amputation of a portion of his left foot under the care of Dr. Wilks. This amputation was a direct result of the infection Plaintiff developed while working aboard the F/V Wayward Wind after stepping on the piece of metal.

15.     As a consequence of the injury, illness, and subsequent treatment, Plaintiff is permanently disabled, he can neither work nor care for himself and in the absence of vocational rehabilitation and training, he will continue to be unemployable.

### COUNT I
### (MAINTENANCE AND CURE AND UNPAID WAGES)

16.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 15 above.

17.     Plaintiff was a seamen aboard the F/V Wayward Wind and he was injured while working in the service of the vessel. Plaintiff is entitled to receive maintenance and cure from the Defendant.

18.     Defendant has provided Plaintiff with neither maintenance, nor cure, nor lost wages and currently, almost $30,000 in medical charges for his care remain unpaid. The Plaintiff needs additional medical and rehabilitative services, but has been denied those services because he has no means of paying for them.

19.     Plaintiff has received no pay for the work he performed on the F/V Wayward Wind,

COMPLAINT
Page 4
Complaint (Sturdevant v. Hulse et al - Case No. A06-_____ CV (_____)

except $1,000 given to him by Max Hulse when he left Alaska to return to Oregon.

20.  Plaintiff has no means of maintaining himself and, but for, the assistance of family, he would be homeless.

21.  Plaintiff is entitled to a judgment against the Defendant for maintenance and cure and back wages in an amount to be proven at the time of trial in excess of $50,000.

### COUNT II
### (UNSEAWORTHINESS)

22.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 21 above.

23.  At the time of Plaintiff's injuries the F/V Wayward Wind was "unseaworthy" because the sharp metal object was allowed to lay on the floor of a poorly lit passageway leading from Plaintiff's bunk, thereby creating an unreasonable risk of injury to he and other crew members.

24.  Moreover, the F/V Wayward Wind was unseaworthy because the Plaintiff and other crew members was told to not get injured or become ill because no medical treatment would be provided and any injured crew member would have to "tough it out" until the vessel returned to port.

25.  Because the F/V Wayward Wind was unseaworthy and this condition caused Plaintiff to suffer injuries, Defendant is liable to the Plaintiff for all the injuries and damages which he has sustained, all in excess of $100,000, the exact amount to be proven at trial.

### COUNT III
### (JONES ACT NEGLIGENCE)

26.  Plaintiff incorporates the allegations set forth in paragraphs 1 through 25 above.

27.  The master and the crew of the F/V Wayward Wind acted negligently and in violation of 46 App. U.S.C. § 688 in allowing a sharp piece of metal to lay on the passageway floor in a

poorly lit area where Plaintiff was required to walk. Moreover, the master and crew of the F/V Wayward Wind were negligent in causing crew members to believe that they would not be provided with medical care if they were injured or became sick, thereby, discouraging the Plaintiff from reporting an injury or complaining of his illness and the infection in a more timely manner.

28.  As a direct and proximate result of the negligence of the Defendant, Plaintiff suffered injuries and damages and he is entitled to be compensated for those injuries and damages in an amount to be proven at the time of trial all in excess of $100,000.

29.  Plaintiff requests that this matter be tried by a jury.

WHEREFORE, Plaintiff prays for judgement against the Defendant which will adequately compensate him for maintenance and cure and lost wages, for the damages he has sustained and will sustain in the future including, but not limited to, past and future medical expenses, permanent physical disability, impaired mobility, loss of earning ability, physical and emotional pain and suffering, loss of enjoyment of life, litigation costs, attorney fees and interest, and for such other and further relief as the court may deem just and proper.

DATED this 31st day of January, 2006.

LAW OFFICES OF ELLIOTT T. DENNIS
Attorney for Plaintiff

By: _____
Elliott T. Dennis
ABA #7610087