Law Offices of Elliott T. Dennis
1503 West 31st Avenue, Suite 201
Anchorage, AK 99503
Phone: 929-4890

Attorneys for David Sturdevant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID STURDEVANT,<br><br>            Plaintiff,<br><br>v.<br><br>LaBRISA, INC.<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:06-CV-00025-TMB |

*FIRST AMENDED COMPLAINT*

Plaintiff for his claim against the Defendant, complains and alleges as follows:

1. This court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. 1332(a), 28 U.S.C. 1333, and the Admiralty and Maritime Jurisdiction of this court.

2. Plaintiff is a resident of the state of Oregon but he is currently residing in the state of California.

3. At all times relevant hereto Defendant, LaBrisa, Inc., was an Alaskan Corporation, the owner of the F/V Wayward Wind, USCG No. 534777, and the employer of its master and crew, including the Plaintiff.

4.  At all times relevant hereto, Max Hulse, as president of LaBrisa, Inc., exercised control over and directed the operation of F/V Wayward Wind. The captain of the F/V Wayward Wind was Scott Hulse, the son of Max Hulse.

5.  At all times relevant hereto, the F/V Wayward Wind was engaged in the scallop fisheries in Prince Williams Sound in the state of Alaska. The F/V Wayward Wind was licensed as an Alaska Commercial fishing vessel and it harvested, processed, and froze scallops.

6.  On or about June 15, 2005, Plaintiff signed on to the F/V Wayward Wind as a crewman to participate in the scallop fisheries in Prince Williams Sound, Alaska. He came to Alaska from his home in Oregon because Dick Sturdevant, his brother and a crewman aboard the F/V Wayward Wind, helped him obtain a job on the F/V Wayward Wind.

7.  Scott Hulse and Max Hulse hired Plaintiff based solely on the advice of Dick Sturdevant that Plaintiff could do the job of working as a deck hand on the F/V Wayward Wind during the Prince William Sound scallop season. At the time Plaintiff was hired, he suffered from Type II diabetes which was controlled by medication. Plaintiff believed he was healthy and physically able to fulfill his duties as a deck hand, and he represented this to his employer.

8.  After several days of working aboard the F/V Wayward Wind in Homer, Alaska preparing her for the fishing season, the vessel sailed to Cordova, Alaska where it took on fuel, picked up an additional crew member and a fisheries observer. The vessel left Cordova, Alaska, sailed to the fishing grounds in Prince Williams Sound, and commenced scallop fishing.

9.  Before the voyage commenced and during the voyage, Plaintiff was under the belief that the vessel would not return to port until the fishing season was over or the vessel had harvested

its allotted quota of product or the vessel needed fuel and food, even if a crewman became sick or injured. Moreover, Plaintiff was under the belief that the F/V Wayward Wind crew members were not covered by any vessel insurance.

10. At all times relevant hereto, the master and crew of the F/V Wayward Wind were employed by Defendant LaBrisa, Inc., the owner of the F/V Wayward Wind and pursuant to the legal principal of *respondeat superior*, LaBrisa, Inc. is liable for the acts and omissions of its president, as well as the master and crew of the F/V Wayward Wind.

11. At or about June 29, 2006, Plaintiff stepped on a small piece of scrap metal laying on the floor of the passageway leading from his bunk to the shower. He did not see the scrap metal on the floor. The full force of his body weight drove the piece of metal into his left foot. After removing the piece of metal from his left foot, he went to work.

12. Over the next several days Plaintiff experienced pain in his left foot. Initially, Plaintiff did not believe he had suffered a significant injury which would require medical attention, but with the passage of time, the pain worsened. Plaintiff continued working as best as he could and did not report the injury because he believed that taking the vessel into port or calling in a medical evacuation flight were not options available to him.

13. By July 10, 2005, Plaintiff was experiencing tremendous pain, he was running a temperature and vomiting, and he was trying to work. By then it was obvious to Plaintiff that an infection had set in; discoloration from the infection was observable and had moved from his left foot up to his left knee. Plaintiff's medical condition was called to the attention of Scott Hulse, the captain of the F/V Wayward Wind. The captain of the F/V Wayward Wind called Max Hulse for

direction, and then he contacted the Cordova Alaska Hospital and United States Coast Guard (USCG). Plaintiff was transported to the hospital in Cordova, Alaska by USCG helicopter for emergency medical treatment.

14. Plaintiff was hospitalized for five days at Cordova, Alaska for treatment of an infection and a diabetic ulcer in his left foot. He was then referred to Providence Hospital in Anchorage, Alaska where he was seen, but not admitted, for treatment. Plaintiff had no place to live in Anchorage and the doctor in Cordova and the doctor at Providence Hospital strongly urged him to return to Roseburg, Oregon where he could be seen and treated by Dr. Wilks who had seen him previously.

15. Dr. Wilks treated Plaintiff and his infection worsened. Plaintiff underwent an amputation of a portion of his left foot under the care of Dr. Wilks. This amputation was a direct result of the infection Plaintiff developed while working aboard the F/V Wayward Wind after stepping on the piece of metal.

16. Plaintiff, being homeless and disabled in Roseburg, Oregon, was offered a place to live at the home of his brother, Donald Sturdevant, in Southern California. Accordingly, the Plaintiff moved to Southern California in the month of October 2005.

17. When Plaintiff moved to Southern California because he was homeless and penniless, he developed an ulcer on his right foot because the amputation of the toe on his left foot changed his walking gait and increased the pressure on his right foot, which lead to an ulcer and infection. Moreover, the infection Plaintiff suffered from which led to amputation of a portion of his left foot

was never cured, and it is alleged that the infection caused or contributed to an infection of the right foot ulcer.

18.     On February 9, 2006, a portion of Plaintiff's right foot was amputated by Dr. Stuhr at the Ventura County Medical Center, because the bone was infected with MRSA, a very aggressive bone infection. This same infection was diagnosed by Dr. Wilks in Oregon before he amputated part of Plaintiff's left foot.

19.     On or about July 11, 2005, Max Hulse reported to his insurance company that Plaintiff was hospitalized in Cordova, Alaska with a severe infection of his left foot. The insurance adjuster assigned to investigate the matter of Plaintiff's injury and sickness conferred with Max Hulse and together they decided to not investigate Plaintiff's injury, or take action to make sure he received necessary and appropriate medical attention.

20.     Neither Max Hulse nor the insurer for Defendant told Plaintiff or any of his health care providers that there was P&I insurance applicable to Plaintiff's injury and they allowed Plaintiff to continue to believe there was no applicable vessel insurance coverage.

21.     Because Plaintiff could not pay for the recommended antibiotics and other recommended health care, he did not receive the medical treatment he would have received if he could have paid, and this lead to the amputation of part of his left foot and later lead to amputation of part of his right foot.

22.     As a consequence of the injury, illness, and subsequent treatment, Plaintiff is permanently disabled, he can neither work nor care for himself and in the absence of vocational rehabilitation and training, he will continue to be unemployable.

## COUNT I
### (MAINTENANCE AND CURE AND UNPAID WAGES)

23. Plaintiff incorporates the allegations set forth in paragraphs 1 through 22 above.

24. Plaintiff was a seamen aboard the F/V Wayward Wind and he was injured while working in the service of the vessel. Plaintiff is entitled to receive maintenance and cure from the Defendant.

25. Defendant provided Plaintiff with neither maintenance, nor cure, nor lost wages and when this action was commenced, almost $30,000 in medical charges for his care through August 2005, remained unpaid. The Plaintiff needs additional medical and rehabilitative services, but has no means of paying for them.

26. Until this suit was filed, Plaintiff had received no pay for the work he performed on the F/V Wayward Wind, except $1,000 given to him by Max Hulse when he left Alaska to return to Oregon.

27. Plaintiff has no means of maintaining himself and, but for the continued assistance of his brother, Donald Sturdevant, he would be homeless.

28. Plaintiff is entitled to a judgment against the Defendant for maintenance and cure and back wages and attorney's fees in an amount to be proven at the time of trial in excess of $50,000.

## COUNT II
### (UNSEAWORTHINESS)

29. Plaintiff incorporates the allegations set forth in paragraphs 1 through 28 above.

FIRST AMENDED COMPLAINT
Page 6
First Amended Complaint (Sturdevant v. Hulse et al -Case No. 3:06-CV-00025-TMB

30. At the time of Plaintiff's injuries, the F/V Wayward Wind was "unseaworthy" because the sharp metal object was allowed to lay on the floor of a passageway leading from Plaintiff's bunk, thereby creating an unreasonable risk of injury to he and other crew members.

31. Moreover, the F/V Wayward Wind was unseaworthy because the Plaintiff was caused to believe that no medical treatment would be provided or medical evacuation would be ordered for an injured or ill crewman, and that any injured crew member would have to "tough it out" until the vessel returned to port.

32. Because the F/V Wayward Wind was unseaworthy and this condition caused Plaintiff to suffer injuries, Defendant is liable to the Plaintiff for all the injuries and damages which he has sustained, all in excess of $100,000, the exact amount to be proven at trial.

## COUNT III
## (GENERAL NEGLIGENCE CLAIM)

33. Plaintiff incorporates the allegations set forth in paragraphs 1 through 32 above.

34. The Defendant, master and the crew of the F/V Wayward Wind acted negligently and in violation of 46 App. U.S.C. § 688: A) in allowing a sharp piece of metal to lay on the passageway floor in a poorly lit area where Plaintiff was required to walk; B) in causing crew members to believe that they would not be provided with medical care if they were injured or became sick, thereby discouraging the Plaintiff from reporting his injury and the infection in a more timely manner; C) in hiring employees, including the Plaintiff, without conducting a complete and thorough review of all factors which could be relevant to the employment relationship; and D) in other ways which may be proven at trial.

FIRST AMENDED COMPLAINT
Page 7
First Amended Complaint (Sturdevant v. Hulse et al -Case No. 3:06-CV-00025-TMB

35. As a direct and proximate result of the negligence of the Defendant, Plaintiff suffered injuries and damages and he is entitled to be compensated for those injuries and damages in an amount to be proven at the time of trial, all in excess of $100,000.

## COUNT IV
### (NEGLIGENT FAILURE TO PROVIDE MAINTENANCE AND CURE)

36. Plaintiff incorporates the allegations set forth in paragraphs 1 through 35 above.

37. Defendant owed Plaintiff a duty to assist him in receiving medical treatment for his injuries including, but not limited to, paying for his treatment and causing his health care provider to know they would be paid in full for the care which they rendered to him.

38. Defendant owed Plaintiff a duty to tell him insurance coverage was available to pay for his health care treatment and the medication needed by him for treatment of the personal injury which he suffered while in the service of the F/V Wayward Wind.

39. Defendant breached its duties to Plaintiff by failing to assist him in receiving necessary and adequate health care, failing to arrange for payment to Plaintiff's health care providers, and by failing to tell Plaintiff and his health care providers that the medication and health care he needed would be paid for. This breach of duty constitutes negligence under general maritime law as well as under the Jones Act (46 App. U.S.C. § 688).

40. Because of Defendant's negligence, Plaintiff has suffered personal injuries which are permanent, physical and emotional pain and suffering, loss of enjoyment of life, and other damages as will be proven at trial.

41.     Plaintiff is entitled to a judgment for compensation damages to pay for past and future medical and rehabilitation treatment expenses, for physical and emotional pain and suffering, for permanent disability, and for attorney's fees incurred in bringing this action.

42.     Plaintiff requests that this matter be tried by a jury.

WHEREFORE, Plaintiff prays for judgment against the Defendant which will adequately compensate him for maintenance and cure and lost wages, for the damages he has sustained and will sustain in the future including, but not limited to, past and future medical expenses, permanent physical disability, impaired mobility, loss of earning ability, physical and emotional pain and suffering, loss of enjoyment of life, litigation costs, attorney fees and interest, and for such other and further relief as the court may deem just and proper.

DATED this 28th day of June, 2006.

LAW OFFICES OF ELLIOTT T. DENNIS
Attorney for Plaintiff


By:   s/ Elliott T. Dennis
      Elliott T. Dennis, ABA #7610087
      1503 W. 31st Avenue, Suite 201
      Anchorage, Alaska 99503
      Phone: (907) 929-4890
      Fax:   (907) 929-4891
      elliott@attorneydennis.com

CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on this 28th day of June, 2006, a true and correct copy of the foregoing was electronically served on the following attorney:

Thomas A. Matthews
Matthews & Zahare, PC
431 W. 7th Ave, Suite 207
Anchorage, AK 99501

Larry E. Altenbrun, Esq.
Nicoll Black Misesnti & Feig PLLC
816 Second Ave., Suite 300
Seattle, WA 98104

By:   s/Elliott T. Dennis